

**FILED**
**Jul 26, 2018**
**04:19 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT KNOXVILLE

| | | |
|---|---|---|
| **JAMES TEAGUE,** | ) | **Docket No. 2018-03-0282** |
| Employee, | ) | |
| v. | ) | |
| **PROIMAGE WHOLESALE** | ) | **State File No. 92229-2015** |
| **SIGNS, LLC,** | ) | |
| Employer, | ) | |
| And | ) | **Judge Pamela B. Johnson** |
| **EMC INSURANCE COMPANY,** | ) | |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS
### (Decision on the Record)

---

This matter came before the Court on James Teague's Request for Expedited Hearing seeking a decision on the record. ProImage Wholesale Signs, LLC did not request an evidentiary hearing. The Court issued a Docketing Notice listing the documents to be considered. This Court gave the parties until July 3, 2018, to file objections to the admissibility of documents and/or position statements, which both parties did. Upon review of the file materials, this Court finds it needs no additional information and decides the issues based on a decision on the record.

The issue is whether Mr. Teague is likely to prevail at a hearing on the merits on entitlement to medical treatment for bilateral hand numbness and weakness arising primarily out of and in the course and scope of his employment. For the reasons below, the Court concludes Mr. Teague failed to establish he is likely to do so. However, the Court finds that he is entitled to a panel of neurologists for evaluation and treatment if causally related to his employment.

### History of Claim

Mr. Teague worked for ProImage as a painter and required to wear latex gloves on occasion. He developed a rash on his hands after ProImage changed to a different type of

1

glove. Mr. Teague reported his injury and went to Neighborhood Urgent Care in November for three visits. The treating nurse practitioner diagnosed him with contact dermatitis and advised him to seek care with a dermatologist if the rash did not improve.

Mr. Teague received authorized treatment with dermatologist Dr. Quyn Rahman, who diagnosed allergic contact dermatitis and ordered allergen testing, which showed irritant reactions to certain chemicals. Dr. Rahman advised Mr. Teague that his condition was chronic, instructed him to eliminate exposures at home and work to the identified irritants, and treated him with antibiotics and steroids. Mr. Teague later complained of numbness in his right index and middle finger. Dr. Rahman suggested Mr. Teague see a neurologist for his numbness complaints but noted that his nerve pain was not associated with skin eczema.

As his symptoms continued, Mr. Teague asked for a second opinion. ProImage offered Mr. Teague a panel of dermatologists, and he selected Dr. Kemunto Mokaya. Dr. Mokaya confirmed Mr. Teague's allergic contact dermatitis (ACD) diagnosis and indicated "his ACD initially started due to likely chemical exposure at work; with ACD from his steroids now superimposed on that initial ACD." Dr. Mokaya changed his treatment to nonsteriodal medications and instructed him to avoid exposure to work chemicals with reassignment to tasks not involving chemicals, gloves, or paint products. Dr. Mokaya confirmed Mr. Teague's condition was chronic and offered oral immunomodulators as a potential treatment option.

In addition to his ACD diagnosis, Dr. Mokaya noted bilateral hand numbness and indicated Mr. Teague's numbness "[c]ould be [c]arpal tunnel syndrome vs[.] another cause." Dr. Mokaya recommended that Mr. Teague see his primary care physician or a neurologist to work up his "neuropathy," suggesting his condition could be due to underlying causes such as diabetes or other causes.

Mr. Teague underwent an independent medical evaluation with Dr. C.M. Salekin. Dr. Salekin's impression was (1) ACD induced by latex gloves at work, (2) occupational ACD further worsened by use of steroid ointment, and (3) "most likely chemical induced peripheral neuropathy due to exposure at work." Dr. Salekin noted further that he would need the material safety data sheets from ProImage to determine if there were any specific chemicals contributing to the neuropathy.

Following Dr. Salekin's evaluation, Mr. Teague asked Dr. Mokaya to review Dr. Salekin's report and assess the causal relationship between his neuropathy and his employment. In response to a written questionnaire, Dr. Mokaya marked "yes" when asked whether "Mr. Teague has sustained peripheral neuropathy due to exposure to chemicals at work and needs to be seen by a neurologist for further treatment."

2

In response, ProImage wrote Dr. Mokaya and requested clarification of her response to Mr. Teague's letter. Dr. Mokaya responded, "I cannot prove with certainty that the neurologic problems are related to dermatitis." She further stated, "I agree with Dr. Salekin's assessment." She later stated, "I do not feel qualified to address these [causation] questions, as numbness/tingling and weakened grip can be caused by very many disorders (over 20 conditions can cause such symptoms)." She suggested that a board-certified neurologist address these questions after an in-person evaluation and adequate work up.

ProImage offered Mr. Teague a panel of neurologists for evaluation and treatment if his condition were causally-related to his employment. Mr. Teague did not select a physician from the panel and demanded a panel of neurologists for treatment without the neurologist addressing causation.

### Findings of Fact and Conclusions of Law

At this stage, Mr. Teague need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2017).

To recover benefits, Mr. Teague must demonstrate he is likely to prevail at a hearing on the merits that his bilateral hand numbness and weakness or peripheral neuropathy arose primarily out of and in the course and scope of his employment. For an injury to be accidental, it must be caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence. *See* Tenn. Code Ann. § 50-6-102(14). Once the employee demonstrates an injury by accident, the employer must provide medical treatment made reasonably necessary by the work injury. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A). Additionally, the opinion of the treating physician is rebuttably presumed correct on the issues of causation and medically necessary treatment. *See* Tenn. Code Ann. §§ 50-6-102(14)(E) and 50-6-204(a)(3)(H).

Here, the Court is presented with conflicting medical opinions. Dr. Salekin, an unauthorized evaluating physician whose opinion is not entitled to a presumption of correctness, determined that Mr. Teague suffered a "most likely chemical induced peripheral neuropathy due to exposure to chemical at work." Yet, he indicated that he needed the material safety data sheets from ProImage "to see if there is any specific chemical contributing to neuropathy." Of interest, Dr. Salekin did not make a neurology referral.

3

In contrast, Dr. Mokaya is the authorized treating physician and her opinion is presumed correct. She, however, contradicted her own opinion on numerous occasions when pressed for a causation opinion by each party. Yet, a review of her medical records and responses in totality demonstrated that she was unable to state that Mr. Teague's bilateral hand numbness and weakness were caused by Mr. Teague's work exposures. She initially noted that Mr. Teague's numbness "[c]ould be [c]arpal tunnel syndrome vs[.] another cause" and later recommended that he see his primary care physician or a neurologist to evaluate his "neuropathy," noting his condition could be due to underlying causes such as diabetes or other causes. Ultimately, she acknowledged her own difficulty, as a dermatologist, in determining causation, stating "I do not feel qualified to address these [causation] questions, as numbness/tingling and weakened grip can be caused by very many disorders (over 20 conditions can cause such symptoms)." She recommended that causation be determined by a board-certified neurologist.

Considering the medical opinions offered to date, the Court concludes Mr. Teague failed to establish he is likely to prevail at a hearing on the merits that his bilateral hand numbness and weakness arose primarily out of and in the course and scope of his employment. However, the Court finds that Dr. Mokoya's recommendation for an evaluation by a neurologist triggered ProImage's duty to provide a panel, which it did. *See* Tenn. Code. Ann. § 50-6-204(a)(3)(A)(ii); *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *17. Thus, the Court holds that Mr. Teague shall select a neurologist from the previously offered panel and ProImage shall provide medical treatment in accordance with Tennessee Code Annotated section 50-6-102 and section 50-6-204.

**IT IS, THEREFORE, ORDERED** as follows:

1. ProImage shall provide Mr. Teague with medical treatment for his work-related injuries as required by Tennessee Code Annotated section 50-6-204 to include authorization of an appointment with a panel-selected neurologist.

2. This matter is set for a **Status Conference** on **September 17, 2018**, at **2:30 p.m. Eastern Time**. The parties must call (865) 594-0091 or (toll-free) (855) 543-5041 to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without the party's participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2017). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED July 26, 2018.**

PAMELA B. JOHNSON, Judge
Court of Workers' Compensation Claims

## APPENDIX

The Court reviewed the entire case file in reaching its decision. Specifically, the Court reviewed the following documents, marked as exhibits for ease of reference:

**Exhibits:**

1. Petition for Benefit Determination
   a. Electronic First Report of Work Injury
   b. Employee Submissions
   c. Employer Submissions
2. Employer's Additional Issues – Objection to Dispute Certification Notice
3. Dispute Certification Notice
4. Request for Expedited Hearing
   a. James Teague's Affidavit
   b. Brief in Support of Request for Expedited Hearing
   c. Dr. Kemunto Mokaya's Response Letter
   d. Standard Form Medical Report – Dr. C.M. Salekin
5. Employer's Response to Request for Expedited Hearing
   a. Attorney Apperson's Letter to Attorney Kherani – June 13, 2018
   b. Attorney Kherani's Response to Attorney Apperson – June 15, 2018
   c. Panel of Physicians – June 12, 2017
   d. Compensation Hearing Order – *Muse v. Campbell Co.,* Docket No. 2015-03-0155 & 2015-03-0156
   e. Medical Records in Support of Employer's Response
6. Docketing Notice
7. Employee's Response to Employer's Response to Request for Expedited Hearing

8. Employer's Response/Reply to Employee's Response to Employer's Response to Request for Expedited Hearing

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on July 26, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|---------------|-----|-------|------------------|
| Ameesh A. Kherani, Employee's Attorney | | | X | akherani@davidhdunaway.com |
| Rick L. Apperson, Employer's Attorney | | | X | rla@spicerfirm.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

6